# 21-2607-CR

---

In the

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

*-versus-*

ANDREW MOODY,

*Defendant – Appellant.*

---

AN APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

BRIEF AND APPENDIX
FOR DEFENDANT- APPELLANT ANDREW MOODY

---

ANTHONY L. RICCO, ESQ.
STEVEN Z. LEGON, ESQ.
(*ON THE BRIEF*)
*Attorneys for Defendant-Appellant*
*20 Vesey Street, Suite 400*
*New York, New York 10007*
*Tel: (212) 791-3919*
E-Mail: tonyricco@aol.com

## TABLE OF CONTENTS

**<u>Page</u>**

Table of Authorities     ii

Preliminary Statement     1

Statement Pursuant to F.R.A.P. Rule 28 (a) (2)     1

Statement of Issues Presented     1

Statement of the Case     1

Argument     18

     The sentence imposed by the district court was
procedurally and substantively reasonable

     I.     Legal Standard     20

Conclusion     24

Certificate of Compliance     26

i

TABLE OF AUTHORITIES

<u>Page</u>

<u>CASES</u>

*Gall v. United States*,
552 U.S. 38 (2007)                                                     12

*United States v. Carty*,
264 F.3d 191, 196 (2d Cir. 2001)                                       22

*United States v. Booker*,
543 U.S. 220 (2005)                                                    22

*United States v. Cavera*,
550 F.3d 180 (2d Cir. 2008)                                            12

*United States v. Juan Carlos Aracena De Jesus*,
20 Cr 19 SDNY (PAE                                                     22

*United States v. Tiffany Days*,
19 Cr. 619 (CM)                                                        22

*United States v. Duczon*,
19 Cr. 651 (LTS)                                                       22

*United States v. Anthony Flynn*,
19 Cr. 585 (SDNY)                                                      22

*United States v. Gammarano*,
321 F.3d 311 (2d Cir. 2003)                                            18

*United States v. Gotti*,
459 F.3d 296 (2d Cir. 2006)                                            11

*United States v. Hsu*,
669 F.3d 112, 120 (2d Cir. 2012)                                       11

*United States v. Legros*,
529 F.3d 470 (2d Cir. 2008)                                      11

*United States v. Lussier,*
 104 F.3d 32 (2d Cir. 1997)                                      18

*United State v. Mateo*,
299 F.Supp.2d 201 (SDNY 2004)                                   22

*United States v. Garnet Steven Murray-Sesay*,
 20 Cr. 03 (SDNY)                                               22

*United States v. Justin Nettles*,
20 Cr 505 (SDNY)                                                22

*United States v. Carlos Ramirez*,
20 Cr 29 (SDNY)                                                 22

*United States v. Rigas*,
583 F.3d 108 (2d Cir. 2009)                                     12

*United States v. Thavaraja*,
740 F.3d 253, 358 (2d Cir. 2014)                                11

*United States v. Raul Vidrasan*,
19 Cr. 651 (SDNY)                                               11

*United States v. Yilmaz*,
910 F.3d 686 (2d Cir. 2018)                                     11

<u>STATUTES</u>

18 U.S.C. §3553(a)                                          Passim

18 U.S.C. §3553(e)                                              18

<u>SENTENCING GUIDELINE</u>

Guideline, § 5H1.12                                             19

iii

## Statement of Subject Matter and Appellate Jurisdiction

This appeal is from a final Judgment of the United States District Court for the Southern District of New York. The District Court had jurisdiction pursuant to 18 U.S.C. §3231. The Judgment was issued on October 6, 2021. A timely Notice of Appeal was filed on October 15, 2021. (A. 1) This Court has jurisdiction of the appeal pursuant to 28 U.S.C. §1291.

## A Statement of Issues Presented For Review

WHETHER APPELLANT'S SENTENCE AT VARIANCE WITH THE GUIDELINES IS SUBSTANTIVELY REASONABLE? APPELLANT RESPECTFULLY SUBMITS THAT IT WAS NOT AND THAT REMAND FOR RESENTENCING IS REQUIRED.

## Statement of the Case

### A.     Preliminary Statement and Summary Argument

Andrew Moody was initially arrested on a violation of supervisory release on June 22, 2018, resulting from a prior drug conviction in the Southern District of New York, under Docket No. 10 Cr. 1160 (VEC), and was detained without bail since the time of his arrest.

On February 26, 2019, Andrew Moody was arraigned, in the Southern District of New York, on a five count indictment, under docket number 19 Cr. 112 (RMB), which charged him and others with a conspiracy, from 2015 up to June 2018, to distribute and possess with intent to distribute 280 grams crack cocaine in violation of 21 U.S.C. §841(b)(1)(A); heroin, in violation of 21 U.S.C. §841(b)(1)(C); and marijuana, in violation of 21 U.S.C.§841(b)(1)(D) and 846 (count one); that on June

1

22, 2018, he distributed and possessed with intent to distribute 280 grams crack cocaine in violation of 21 U.S.C. §841(b)(1)(A)(count two); that from 2015 up to June 2018, Andrew Moody used, carried, and possessed a firearm, and aided and abetted the same, in relation to the drug trafficking offenses charged in counts one and two in violation of 18 U.S.C. §924(c)(1)(A)(count three); that on June 22, 2018, Andrew Moody was a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(count four); and that on June 22, 2018, Andrew Moody possessed a defaced firearm in violation of 18 U.S.C. §922(k)(count five).

On October 29, 2019, Andrew Moody appeared before Magistrate Judge James L. Cott and pleaded guilty, pursuant to a written plea agreement, to the criminal conduct set forth under count one of the indictment of docket number 19 Cr. 112 (RMB), which alleged that from 2015 through his arrest on June 22, 2018, Andrew Moody conspired with others to distribute and possess with intent to distribute (a) 280 grams and more of cocaine base; (b) heroin, and (c) marijuana, in violation of 21 U.S.C. § 84l(b)(l)(A), 841(b)(l)(C), and 846. See, *Transcript dated October 29, 2019, page 6, ECF No. 34 Filed on 11/08/19, at page 6 of 20.* On November 12, 2019, the plea allocution before Magistrate Judge Cott was accepted by the district court. See, *ECF No. 36, Filed 11/12/19.*

Two years later, on October 6, 2021, Andrew Moody appeared for sentencing before the district court and was sentenced to both 180 months imprisonment, under

the above docket 19 Cr. 112 (RMB), to run consecutive with 50 months term of imprisonment imposed under 10 Cr. 1160 (Violation of Supervised Release), for a total of 230 months, to be followed by a five (5) year term of supervised release (to be served concurrent under both dockets), as well as a $100 special assessment. See, Judgment, dated October 6, 2021 (A **2**).

The present appeal raises one single issue: Andrew Moody argues that his term of imprisonment of 230 months imprisonment was *substantively* unreasonable because it did not sufficiently account for or give meaningful consideration to the devastating conditions and trauma that he endured as an African American child growing up in one of our nation's devastating *de facto* segregated ghettos, communities that resulted from purposeful racial policies of social and economic exclusion with resulting poverty and ensuing criminality.

Andrew Moody recognizes that this court rarely reverses a sentence when there has been a waiver of an appeal and the sentence imposed is within the guideline range, and more significantly that this court has never addressed whether inner city African American defendants are accorded meaningful review of their backgrounds at time of sentencing; however, the sentencing imposed in this case was unreasonable because it did not sufficiently account for or give meaningful consideration to the individual factors related to his background and history, and seeks remand so that those individual factors may be provided meaningful consideration - that is the

constitutional application of the consecutive sentence at variance as to both sentences under 18 U.S.C. §3553(a).1

Andrew Moody seeks remand for re-sentencing.

**B.     Statement of The Facts**

The sentencing subject to the appeal in this case involves appropriate the punishment to be imposed upon an offender as a result of his sustained role, over a three year period of time, in the proliferation of narcotics distribution, which has served to contribute to the destruction of the fragile fabric of our nation's racial ghettos.

The government alleged that for a period of three years, from June 2015 through the date of his arrest in June 2018, law enforcement was aware of and observed Andrew Moody head up a group of individuals who packaged and sold street level quantities of drugs from a row house in a drug infested area of the Bronx, on College Avenue.  According to the government's theory, as set forth in the

---

[1]     Appellate Counsel recognizes the extraordinary relief being requested, and that there will be many who would respond with anger, rather than in a moment of thoughtful consideration.  However, after years of faithfully practicing before our Courts and having the highest level of respect for the efforts to eradicate the vestiges of the influence of racial indifference at sentencing (and other aspects of our criminal justice system), counsel has been become deeply concerned that at the time of sentencing, judges of the district court, as here, have failed to give meaningful consideration to the issues confronted by inner city youth, such as Andrew Moody, and the impact that those negative risk factors should have upon the sentences imposed.  In fact, rather than serving as mitigating factors, the negative risk factors are viewed as aggravating factors justifying the imposition of unfair lengthy sentences.  Finally, counsel recognizes that unless responsible members of the Bar speak up, this practice will continue.

4

Presentence Investigation Report, law enforcement agents often observed drug customers waiting on lines that stretched down the block.  See, PSR ¶¶ 12, 14, 15, 17.)

During  April 2018, the basement of the row house was searched pursuant to a state court search warrant.  During that search, law enforcement recovered from the basement, approximately 113 small plastic bags of crack cocaine, approximately 24 small plastic bags of marijuana, approximately $571 in cash, and two two-way radios. (PSR ¶ 13.)

In June 2018, law enforcement agents executed another search warrant, this time for the entirety of the row house.  Law enforcement agents recovered more than 280 grams of crack cocaine, distribution-level quantities of heroin and marijuana.  Law enforcement recovered $34,382 in cash, drug ledgers, packaging materials, along with a defaced .45 caliber semi-automatic pistol. (See, PSR ¶ 22.).  During the execution of the search warrant, Andrew Moody was found sleeping inside the top floor of the row house, and was arrested for violating the terms of his supervised release.

In this case, it is undisputed that Andrew Moody was the head of an operation that was involved in the prolific street level distribution of heroin, crack and marijuana on College Avenue in the South Bronx.  There is no question that the area of the South Bronx, in which Andrew Moody and so many other defendants who regularly appear before courts for the distribution of drugs, have descended into devastating environment of the vicious cycle of inter-generational poverty, neglect, hopeless, along with the resulting proliferation of drug use and its associated violence.  There is

5

no question that law enforcement has waged an inter-generational effort to eradicate the profound presence of drug distribution and its devastating, and at times, gruesome levels of brutality and violence. There is also no question that offenders such as Andrew Moody must be punished, and justly, for their failure to overcome the trappings and conditions that have destroyed the lives of their parents, and grand-parents, and led to their participation in serious criminal behavior.

When African American offenders from our nation's ghettos, such as Andrew Moody, are before the court, they are confronted with a sentencing conundrum. Congress' statutory regime - - society is poised to punish them, and punish them severely, for their serious criminal conduct.

The Entry of a Guilty Plea

As previously stated, on October 29, 2019, Andrew Moody appeared before Magistrate Judge James L. Cott and pleaded guilty, pursuant to a written plea agreement, to the criminal conduct set forth under count one of the indictment of docket number 19 Cr. 112 (RMB) to wit: that he conspired with others to distribute and possess with intent to distribute (a) 280 grams and more of cocaine base; (b) heroin, and (c) marijuana, in violation of 21 U.S.C. § 84l(b)(l)(A), 841(b)(l)(C), and 846. See, *ECF No. 34 Filed on 11/08/19, at page 6 of 20*.

**C.    Appellant's Sentencing Hearing**

Andrew Moody seeks remand based upon a claim that the court did not give proper weight and/or meaningful consideration to the proliferation of compelling

6

mitigation factors submitted in relation to his background and character, which support a sentence at variance with the sentencing guidelines; and therefore, the sentence imposed was unreasonable.

The so-called "starting point" for a sentencing determination was the sentencing calculation and numerical value set forth utilizing sentencing guidelines. On the one hand, the calculation of that numerical value absolutely forbids any consideration, in its calculation, of the lack of guidance and other profound mitigating factors endured by Andrew Moody. On the other hand, the district court failed to provide the compelling mitigating factors, presented by Andrew Moody, any meaningful consideration when addressing its analysis of the application of the factors set forth under 18 U.S.C. § 3553(a).

<u>Compelling Materials Submitted For Reviewed by The District Court</u>

In preparation for sentencing, a great effort went into presenting the truth of a compelling narrative of a life so tragically derailed, as a result of the trauma Andrew Moody endured during his formative and teenage years, and how those factors influenced his involvement in the charged criminal conduct. Andrew Moody recognized that the case involved the distribution of drugs in our community, an ever present threat that destroys the lives of those who become addicted and those who distribute the drugs.

Andrew Moody has experienced, first hand, the penetrating and long lasting impact of this destructive force. Born addicted to drugs to teenage drug abusers, he

has experienced the abandonment, neglect and trauma that this destructive force imposes upon the lives of children. Andrew Moody has been shot on the streets and almost lost his life to the violence accompanying the drug trade. Notwithstanding his experiences, at sentencing, Andrew Moody also presented compelling evidence that he is an individual capable of redemption, an individual who wanted a better life for his children.

In support of sentencing, Andrew Moody submitted a compelling volume of sentencing materials. Andrew Moody submitted the following: (1) a letter of reflection from Andrew Moody, along with (2) letters of support from friends Jessica Acevedo and her daughter, and from Franklyn Acevedo. Andrew Moody also submitted (3) a complete Inmate Educational Data Transcript; (4) Several Certificates of Achievement; along with (5) an evaluation of Andrew Moody's work performance from a BOP Staff member and (6) a letter of recommendation from the Director of the BOP personal improvement program entitled "Lead By Example and Reverse the Trend." (ECF 75)(A-   )

Counsel for Andrew Moody submitted a thoughtful supporting letter, wherein counsel explained that the letters submitted in support provide a much needed insight in which to contemplate the punishment to be imposed upon Andrew Moody for his criminal conduct. In the thoughtful submission it is was the hope of counsel that the district court be provided with the subtle nuances of the life of man who is far greater than his participation in narcotics trafficking. The letters from family and friends were

submitted to help demonstrate the complexity of the negative influence of the toxic mix of poverty, drug abuse and drug trafficking that exists in our society. The letters served to demonstrate that an offender like Andrew Moody, being born to drug addicted teenage parents and raised in family circumstances, and within communities that are overwhelmed by the negative conditions of physical and psychological abuse, along with social alienation, economic disenfranchisement, drugs and violence, simply never had a chance, but that once removed from the paralysis of those situations, a few resilient survivors, like Andrew Moody, possess extraordinary qualities that, to outsiders, seem a contradiction to the trauma that they, in fact, endured.

However, a closer more informed view of their lives helps provide insight into the great loss of promise of the children, like Andrew Moody, who, in reality, are also victims of the vicious cycle of poverty, social alienation, drug abuse and prison.

In his case, the Presentence Investigation Report recognized that Andrew Moody had served his time in pre-trial detention actively pursuing the educational and vocational opportunities provided by the Bureau of Prisons. Those modest efforts demonstrated that when removed from the toxic environment which served to derail and destroy his life, and the life of his parents, Andrew Moody has the ability to learn and grow.

Andrew Moody, like so many of the young men who come before the court for sentencing, desperately want a different life for themselves, a life free from the violence and trappings of the drug culture and violence that dominates the

communities in which they are born and raised. And, while the district court stated that it recognized the powerful mitigating factors which served to derail Andrew Moody's life, and that it was impressed with Andrew Moody's substantial efforts towards redemption based upon his participation in the educational programs made available by the Bureau of Prisons, the district court failed to give these compelling factors "meaningful consideration" in applying the sentencing regime set forth under 18 U.S.C. §3553(a).

To state, as the government shall argue against this appeal, that a sentence imposed within or below the guideline range is deemed to be reasonable, and that the ultimate combined sentence of 230 months is below the guideline range of 360 to life, begs the compelling question presented, and serves to block a consideration of whether the sentence imposed upon Andrew Moody included a "meaningful consideration" of his individual background and character as mandated by Congress under 18 U.S.C. §3553(a).

The volume of materials presented served to help inform the court that individual sentencing brings meaning to the notion that effective punishment and deterrence does not have to be based upon harshness and extended prison sentences - as always argued by the government.

## Standard of Review

This Court generally examines a sentence for procedural and substantive reasonableness under an abuse of discretion standard. See *United States v. Cavera*, 550

F.3d 180, 189-90 (2d Cir. 2008) (en banc). However, "In determining the appropriate standard of review for a district court's application of the Guidelines to the specific facts of a case, this Court follows an either/or approach, adopting a *de novo* standard of review when the district court's application was primarily legal in nature, and adopting a clear error approach when the determination was primarily factual." *United States v. Hsu*, 669 F.3d 112, 120 (2d Cir. 2012) ("cleaned up"), citing, *United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006); see also *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (explaining that abuse-of-discretion standard of review incorporates *de novo* review to questions of law, including interpretation of the Guidelines), citing, *United States v. Thavaraja*, 740 F.3d 253, 358 (2d Cir. 2014), and *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

## Point I

## THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT TO A TOTAL OF 230 MONTHS' IMPRISONMENT

### A.    Introduction

In this case the district court erred when it failed to apply 18 U.S.C. §3553(a) factors in relation to sentence imposed on the violation of supervised release which resulted in the imposition of the ultimate sentence which is substantively unreasonable.

At the outset Andrew Moody notes his recognition that the abuse of discretion standard applied to determinations of substantive reasonableness is a high standard.

11

*United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (noting that the Court will "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions") (internal quotation marks omitted); *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009) (requiring sentence to be "shockingly high, shockingly low, or otherwise unsupportable" for substantive unreasonableness).

Andrew Moody further recognizes that this Court will generally "not substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," *Cavera*, 550 F.3d at 189, but this Court's judgment of a sentence's substantive reasonableness must nonetheless be informed by "the extent of any variance from the Guideline range," *Gall v. United States*, supra, 552 U.S. 38, 51 (2007), to "ensure that the justification is sufficiently compelling to support the degree of the variance," id. at 50, which, of course, includes not merely the sufficiency but also the insufficiency of the variance.

As result, here, because Andrew Moody received a Guideline sentence of within or below 360 months to life (agreed upon), the determination of substantive reasonableness rises and falls upon an examination of Andrew Moody's sentencing factors under 18 U.S.C. § 3553(a), and this Court's determination of whether the variance was objectively sufficient. While acknowledging his heavy burden, Andrew Moody nonetheless submits that the abuse of discretion standard is met when Judge Berman sentenced Andrew Moody to 180 months imprisonment, under docket 19 Cr.

12

112, to run consecutive with 50 months term of imprisonment imposed under 10 Cr. 1160 (Violation of Supervised Release), for a total of 230 months. The total sentence imposed of 230 months, which is 130 months (or 10 years, 10 months) at variance and below the agreed upon applicable guideline range of 360 to live, appears at first glance to demonstrate, *prima facie*, that court gave consideration to the mitigating factors presented by Andrew Moody. However, a close review demonstrates that the mitigation factors were not given equal meaningful consideration towards the ultimate sentence imposed. This procedural error resulted in the imposition of a sentence that was substantively unreasonable, and as a result, remand is required.

The Sentence Imposed

At the time of sentencing, Andrew Moody presented compelling mitigation evidence to support a sentence at variance with his guideline range of 360 months to life. Andrew Moody presented compelling evidence of the negative risk factors that were present in his life as a young boy and teen growing into young adulthood while living in Brooklyn, Harlem, and later the Bronx. Those negative risk factors include Andrew Moody's exposure, from his very birth to being raised in a home and community with an exceptionally high level of exposure to unrelenting violence, drug abuse, and emotional torment. Andrew Moody was born to a teenage mother, who herself struggled throughout her life to overcome her own rage resulting from inter-generational dysfunction, physical abuse and the ravages of drug addiction.

13

Andrew Moody, like far too many other children, failed to overcome the conditions of depravity into which he was born and raised. The combined presence and influence of these powerful negative risk factors, both at home and in his community, served to derail Andrew Moody's life and ushered a once promising boy into a destructive life of narcotics.

To demonstrate the gravity of the mitigation factors present in Andrew Moody's life, I would like to share with this court, as I did with the district court, my first meeting with Andrew Moody at the Metropolitan Correction Center over four years ago, on September 26, 2018. In an attempt to get know Andrew Moody, I asked about the basics of his life journey; where was he raised, and who were his siblings, parents and grandparents.

During this first encounter, Andrew Moody shared with me a moment in his life narrative that has resonated deeply, even to this day. First, Andrew Jermaine Nathaniel Moody was born to drug addicted teenage parents. See, PSR, ¶ 61, page 16. Significantly, Andrew Moody has no recollection of seeing his father after he was about 5 years of age. Andrew Moody said that after his 5th birthday, his father completely disappeared without any warning or explanation. See, PSR, ¶ 62, page 17. Shortly thereafter, Andrew Moody was also abandoned by his mother. Andrew Moody's parents were both full fledged drug addicts, and both he and his younger sister were rescued by their then elderly maternal grandmother, Ruby Williams, from the abuse and neglect of being in the custody of drug addicts. See, PSR, ¶ 64, page 17.

14

Andrew Moody shared with me an encounter that he had early one evening, many years later, when he was a young adult selling crack on the streets of the Bronx. See, PSR., ¶ 68, page 18. When customers were lining up to purchase crack-cocaine from Andrew Moody, he thought he noticed a woman on the line. The woman was shabbily dressed in tattered, dirty clothing, NS had a cap pulled down hiding most of her face. She appeared to be just another hopelessly trapped crack addict, but something attracted his attention to the woman. Andrew Moody approached the woman and asked her what was her name. The woman responded that "*dey call me Dez.*" Andrew said "*Isn't your name Desiree?*" She responded "*Yes.*" Andrew Moody then said to the woman who was in the throes of addiction, "*You don't remember me,*" as he took off his cap, exposing his full face. The woman looked into his face, paused and responded "*No. I don't.*" Andrew said "*It's me, mom, its Jermaine.*"

In this profound moment of tragedy, I became inspired to learn more about the life of Andrew Moody, and this reunion - - for a boy who had spent many nights crying for and wondering what happened to his mother, and why she completely abandoned him and never looked back. As an attorney who is well aware of, and embraces the high standards of excellence expected by the district court and this court, I was truly inspired to discover why a boy born addicted to drugs, abandoned by his parents, who were unable to overcome their addiction to drugs, was finally reunited with his mother - still addicted - but now purchasing drugs from the hand of her son, who she brought into the world addicted to drugs. I also later discovered

that, notwithstanding this abandonment and his exposure to a horrific - - if not criminal - - level of physical, sexual and psychological abuse, that Andrew Moody who, when not involved with selling drugs, was a doting, loving father, who was inspiring his own children towards academic excellence. I also discovered that Andrew Moody's institutional record was beyond exemplary. Andrew Moody's record of achievement and accomplishment while in pre-trial detention was extraordinary, and a powerful indicator of his potential for rehabilitation and redemption.

Rather than rehash the sentencing arguments made before the district court, I humbly request that before making a decision regarding the merits, or lack thereof, of Andrew Moody's prayer for appellate review of whether the sentence imposed resulted from an abuse of discretion, that this court review the well researched and thoughtful mitigation documents filed by the defense in support of a sentence at variance with the guidelines; to wit: (1) the Defense Sentencing Recommendation (ECF Dkt. No. 70)(A. 53), and (2) the Supplemental Sentencing Recommendation (ECF Dkt. No. 71)(A. 89), along with its supporting Exhibits ECF Dkt. No. 71-1 and ECF Dkt. 71-2 (A. 96) and (3) the Second Supplemental Sentencing Recommendation (ECF Dkt. No. 75)(A. 114), along with its supporting Exhibits ECF Dkt. No. 75-1 and ECF Dkt. No. 75-2. (A. 119)

The documents presented by the defense present a compelling narrative of the destruction of the life of a young boy born into the harsh world of drug addiction and

violence. The documents present an accurate and credible assessment of how Andrew Moody's life was derailed by his exposure to trauma and neglect, and how those circumstances influenced his pathway into the distribution of narcotics. The documents, which include the incredibly thoughtful letters from his friends and family, who describe his loving commitment to his children and his positive contribution and influence upon them in school and in their lives. The documents, which also include a plethora of educational records from the BOP accurately present the possibility of redemption and the potential of a young man who is far greater than his involvement in narcotics.

In the consideration of the sentence to be imposed under Docket No. 19-112, the court stated that it considered these compelling factors against the guideline range of 360 to life, and sentenced Andrew Moody to 180 months. However, the court then sentenced Andrew Moody to the statutory maximum of 60 months for his violation of supervisory release, without applying any mitigating factors or considering any of the 3553 (a) in connection therewith. As a result, the consideration of the mitigating factors initially applied was eviscerated by including in the total sentence imposed and an additional 60 months consecutive; 60 months which did not take under consideration or apply any mitigation factors or consideration of any factors under 18 U.S.C. §3553(a). In other words, although the court stated that it considered 18 U.S.C. §3553(a) in connection with the sentence imposed, it only did so partially,

17

since the court failed apply a §3553 analysis or consider any of the powerful factors in mitigation with the additional 60 months imposed.

The failure to meaningfully consider the type of compelling mitigation presented in this case is inconsistent with the sentencing philosophy set forth in 18 U.S.C. §3553(a).

When a defendant violates any condition of supervised release, the court has the authority to modify the conditions, terminate the supervised release before the original expiration date, or revoke supervised release and impose a term of imprisonment. See, 18 U.S.C. § 3583(e). Chapter Seven of the *Guidelines Manual* contains policy statements that classify violations, recommend when courts should revoke supervised release, and recommend terms of imprisonment for classes of violations, *inter alia.* See, U.S. Sentencing Commission, *Guidelines Manual*, Ch.7, Pt. A, intro. comment (Nov. 2018). In determining whether to revoke, modify or extend a term of supervised release, 18 U.S.C. § 3583(e) requires the court to consider most, but not all, of the factors the court considers when imposing a term of imprisonment, including the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence, rehabilitation, typical punishments, *inter alia.* See, *United States v. Gammarano*, 321 F.3d 311, 314 (2d Cir. 2003)(cross-referencing several provisions of section 3553(a) which delineates the factors to be considered in imposing a sentence). See, also, *United States v. Lussier,* 104 F.3d 32, 35 (2d Cir. 1997).

18

At the time Andrew Moody entered his plea on the violation of supervised release, Judge Berman promised the following:

> THE COURT:     Do you understand, Mr. Moody, that when I come to sentence you for this probation violation I will consider factors set forth at 18, United States Code, Section 3583(e), and those factors include the nature and the circumstances of the offense, namely, the probation specification, as well as the history and characteristics of yourself, and I'll try to accomplish these objectives, protect the public from further crimes, afford adequate deterrence to criminal conduct, to provide you with needed educational or vocational training or medical care or other correctional treatment in the most effective manner.

See, Transcript, E.C.F., Dkt No. 38, page 18, line 2 through 12.

In this case, notwithstanding the above promise, Judge Berman failed to conduct any such analysis, and then imposed this defective 60 month sentence in connection with the sentence to be imposed and served under 19-Cr-112.

As a result of the foregoing, Andrew Moody was denied the right to have meaningful consideration of the compelling mitigation factors that served to derail his life. On the one hand, the guidelines themselves fail account for or provide any numerical value to the destructive circumstances related to Andrew Moody's individual background and history (Lack of Youthful Guidance) and other similar factors, as well as the untreated trauma that he endured, and which served to derail his life. The Sentencing Commission's policy, Guideline 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances) that prohibits consideration of factors which

demonstrate a lack of youthful guidance and direction, is contrary to the sentencing enactments of Congress.

However, it is anticipated that the government shall argue that as long as the sentenced imposed by the court was within the guidelines range, Andrew Moody has waived his right to object to the reasonableness of the sentence imposed. However, when factors related to Andrew Moody's background are not meaningfully considered in relation to the Guidelines, and are not meaningfully considered in relation to a sentence at variance with the Guidelines under 18 U.S.C. §3553(a), the right to individualized sentencing is violated. And, in this case, it resulted in a sentencing range which is *per se* unreasonable, and therefore the sentence imposed must be vacated and the case remanded.

Remand is required for the court to explain why there was no consideration of mitigation factors or any factors under 18 U.S.C. §3553(a) in the imposition of a sentence which ultimately added five years to the total term to be served. In the absence of such a record, the court's failure to articulate the reasons for abdicating its exercise of discretion is itself an abuse of discretion warranting remand for a more complete record.2

---

[2]     In this case, conviction for distribution of drugs, and the possession of firearms in relation to the distribution of drugs, the utilization of the premises as a stash house, and Andrew Moody's role in the offense served to enhance the applicable sentencing range a substantial eight levels. See, PSR, ¶29 and ¶30 and ¶31 at page 8. And, significantly, consideration that this conduct took place while on supervised release added 2 points to the calculation of Andrew Moody's Criminal History Category. See, PSR, ¶50 at page 14. However, the court did not conduct any §3553 (a) analysis to the very same violation of supervised release that was employed to enhance the sentence imposed. Fundamental fairness and due process was violated in the absence of an explanation by the district court as

20

In the years following the Supreme Court's decision in *Booker*, defense counsel have argued that inner city African American and Latino defendants born into poor impoverished environments, and under circumstances that have substantially contributed and influenced the criminal conduct under consideration at the time of sentencing, are at a decidedly unfair disadvantage. While the Sentencing Guidelines are no longer necessary, they nevertheless provide a benchmark for the sentence imposed, and whether such a defendant maintains a right to challenge the sentence imposed on appeal. The Sentencing Guidelines serve to strip inner city African American and Latino defendants of meaningful consideration of the sentences ultimately imposed, and that is precisely what occurred in the sentencing of Andrew Moody.

The sentence ultimately imposed did not fully take into account the compelling mitigation factors presented, nor were they fairly applied to the ultimate sentence imposed. In this case, a defendant deserving of a full and complete assessment of his individual mitigating factors, was denied that right with the sentence imposed.

In addition to the foregoing related to mitigating factors in his background, the district court failed to articulate why Andrew Moody was not granted any relief from the statutory maximum as a result of his detention in the Metropolitan Correctional Center during the COVID-19 pandemic.

---

to why mitigation factors were applied to one component of Andrew Moody's sentence, but are conspicuously absent from consideration of another component that substantially increased the ultimate sentence imposed.

21

In addition to the factors related to his background and character, Andrew Moody requested that the district court take into consideration, that during his period of detention over the past 16 months, he has been forced to endure extraordinarily harsh, unprecedented and punitive conditions of confinement resulting from the COVID-19 pandemic, in arriving at the appropriate sentence to impose in this case. It is significant that the impact of the COVID-19 pandemic is not mentioned at all in the Presentence Investigation Report, and specifically not in relation to its sentencing recommendation. Courts in the Southern District and throughout our country have become well-aware of the conditions of confinement that detainees were subjected to at the Metropolitan Correctional Center, both prior to and during the COVID-19 pandemic. The conditions of confinement were so harsh, that many district court judges in the Southern and Eastern Districts of New York, along with district courts across our country, granted sentences at variance with the guidelines based upon the harsh conditions endured in pre-trial detention with the Bureau of Prisons. *See, e.g., United States v. Tiffany Days*, 19 Cr. 619 (CM); *United States v. Duczon*, 19 Cr. 651 (LTS).3 In fact, one Judge in the Southern District of New York has considered that the harshness of the conditions of confinement under COVID-19 is the "*essentially the*

---

3       *See also, United States v. Victor Phillips*, 19 Cr. 809; *United States v. Garnet Steven Murray-Sesay*, 20 Cr. 03 (SDNY); *United States v. Roderic Hendryx*, 18 Cr. 478 (EDNY); *United States v. Juan Carlos Aracena De Jesus*, 20 Cr 19 SDNY (PAE); *United States v. Raul Vidrasan*, 19 Cr. 651 (SDNY); *United States v. Anthony Flynn*, 19 Cr. 585 (SDNY); and *United States v. Justin Nettles*, 20 Cr 505 (SDNY) among many more cases.

*equivalent of either time and a half or two times what would ordinarily be served." See, United States v. Carlos Ramirez, 20-Cr-29 (JPO)(April 12, 2021).*

Additionally, it is without controversy that the district court had the authority, under the 18 U.S.C. §3553(a) sentencing factors, to consider the severity of the conditions of confinement in determining the sufficiency of a sentence to impose. First, Congress has granted sentencing courts discretion to review and consider a broad range of information for the purpose of deciding an appropriate sentence. See, 18 U.S.C. §3661. And, even during the pre-*Booker* era, federal courts recognized that a sentencing court had the authority to consider the severity of the conditions of confinement in determining the proper sentence to impose. *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (*per curiam*); *See also*, *United State v. Mateo*, 299 F.Supp.2d 201 (SDNY 2004) (9 level downward departure granted).

Yet, in this case, Judge Berman failed to provide any explanation, whatsoever, as to why Andrew Moody, a defendant who actually contracted, endured and survived COVID-19 infection, did not receive any credit at all in mitigation of the 60 months statutory maximum added to the sentence imposed. The Second Circuit has long held that the primary goal of a revocation sentence is to sanction the breach of trust while on supervision, not to punish the conduct underlying the violation. See, *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007). However, it is clear that not only did Judge Berman punish Andrew Moody for his underlying conduct twice, but

23

that he failed in his responsibility to explain why the above mitigation factors were not applied to the ultimate sentence that was imposed upon Andrew Moody.

## CONCLUSION

As previously stated, to set aside a District Court's *substantive* determination, the sentence must be "shockingly high, shockingly low, or otherwise unsupportable." *Rigas*, 583 F.3d at 123. When one considers that the district court failed to properly give meaningful consideration to the mitigating factors set forth in the defendant's background, and that the court increased his sentence by 60 months, to be served consecutively, without consideration or application of the very same mitigation factors to the 60 month increase, and the court's failure to consider Andrew Moody's exposure and contraction of COVID-19, under historically harsh conditions of confinement, has resulted in the imposition of a sentence with is not supportable on the present record.

This failure to adequately credit mitigation resulted in a Guidelines sentence that is shocking and unreasonable. Accordingly, Defendant-Appellant Andrew Moody, by and through counsel, respectfully submit that his 230-month sentence of imprisonment imposed was substantively unreasonable.

For the reasons set forth above, the sentence imposed must be vacated and this matter must be remanded to the District Court for re-sentencing in accordance with due process.

Dated: New York, New York
      November 1, 2022

24

Respectfully Submitted,

*Anthony L. Ricco*

Anthony L. Ricco
Attorney for *Andrew Moody*

Steven Z. Legon, Esq.
*On the Brief*

**Certificate of Compliance**

Anthony L. Ricco, an attorney admitted to practice law before this Court certifies that the foregoing Appellee's Brief conforms to the requirements of Federal Rule of Appellate Procedure, 32(a)(7)(B) and that said document contains 6705 words of monospace type.

Dated:  New York, New York
          November 1, 2022

_Anthony L. Ricco_
Anthony L. Ricco
Attorney for *Andrew Moody*
20 Vesey Street, Suite 400
New York, New York 10007