**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 21-2607 _____     _____ Caption [use short title] _____

Motion for: dismissal of appeal _____

_____

_____

Set forth below precise, complete statement of relief sought:

The Government seeks to dismiss the appeal _____

on the basis that the appellant knowingly and _____

voluntarily waived his appellate rights. _____

_____

_____

_____

**United States v. Moody**

MOVING PARTY: United States of America _____     OPPOSING PARTY: Andrew Moody _____

     ☐ Plaintiff      ☐ Defendant

     ☐ Appellant/Petitioner      ☑ Appellee/Respondent

MOVING ATTORNEY: Robert B. Sobelman _____     OPPOSING ATTORNEY: Anthony L. Ricco _____

[name of attorney, with firm, address, phone number and e-mail]

U.S. Attorney's Office, S.D.N.Y. _____     20 Vesey Street, Suite 400 _____

One Saint Andrew's Plaza, New York, NY 10007 ___     New York, NY 10007 _____

212-637-2616; robert.sobelman@usdoj.gov _____     212-791-3919; tonyricco@aol.com _____

Court- Judge/ Agency appealed from: Hon. Richard M. Berman, U.S. District Judge, Southern District of New York ___

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):_____
_____

Opposing counsel's position on motion:
   ☐ Unopposed   ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response:
   ☐ Yes   ☐ No   ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?    ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Is oral argument on motion requested?    ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☐ Yes ☑ No If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Robert B. Sobelman _____ Date: 2/1/2023 _____     Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,       :

        *Appellee*,       :    **AFFIRMATION**

    - v. -       :    No. 21-2607

ANDREW MOODY, also known as J.R.,  :

      *Defendant-Appellant*.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK        )
COUNTY OF NEW YORK     :  ss.:
SOUTHERN DISTRICT OF NEW YORK  )

    ROBERT B. SOBELMAN, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

    1.    I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York, and I represent the Government in this appeal. I submit this affirmation in support of the Government's motion to dismiss the appeal brought by defendant Andrew Moody based on: (a) Moody's knowing and voluntary waiver of his appellate rights with respect to the sentence for Moody's narcotics conspiracy conviction; and (b) this Court's lack of jurisdiction to review the sentence for Moody's supervised-release violation.

## PRELIMINARY STATEMENT

2.      Moody appeals from a judgment of conviction entered on October 6, 2021, in the United States District Court for the Southern District of New York, by the Honorable Richard M. Berman, United States District Judge, following Moody's guilty plea. (A. 1-8).[1]

3.      Indictment 19 Cr. 112 (RMB) (the "Indictment") was filed on February 20, 2019, in five counts. Count One charged Moody with participating in a conspiracy to distribute (a) 280 grams and more of cocaine base, (b) heroin, and (c) marihuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), (b)(1)(C), and (b)(1)(D). Count Two charged Moody with possession with intent to distribute and distribution of 280 grams and more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. Count Three charged Moody with possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(C)(i), and 2. Count Four charged Moody with possession

---

[1] "Br." refers to Moody's brief on appeal; "A." refers to the appendix filed with that brief; "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Moody's sentencing in case number 19 Cr. 112 (RMB); "Dkt." refers to an entry on the District Court's docket for case number 19 Cr. 112 (RMB); and "Ex." refers to an exhibit to this motion.

Unless otherwise noted, citations omit internal quotation marks, case and record citations, footnotes, and previous alterations.

of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2. Count Five charged Moody with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 2. (A. 17-20).

4.     On October 29, 2019, Moody pleaded guilty before the Honorable James L. Cott, United States Magistrate Judge, to Count One of the Indictment, (Dkt. 34), pursuant to a written plea agreement with the Government (the "Plea Agreement"). (Ex. A).[2] Under the Plea Agreement, Moody agreed, among other things, not to appeal any sentence within or below the stipulated Guidelines range of 360 months' to life imprisonment. (Ex. A at 5; A. 28).

5.     On November 12, 2019, Judge Berman accepted Moody's guilty plea to Count One of the Indictment, and Moody pleaded guilty before Judge Berman to a violation of supervised release in case number 10 Cr. 1160 (RMB). (Dkt. 38).

6.     On October 6, 2021, Judge Berman sentenced Moody to 180 months' imprisonment in case number 19 Cr. 112, to be followed by five years of supervised release, and imposed a $100 special assessment. (Dkt. 88 at 36-39, 41-42). In the same proceeding, Judge Berman sentenced Moody in case number 10 Cr. 1160 to a term of 50 months' imprisonment on the violation of supervised release, to be served consecutively to the other sentence of imprisonment, to be followed by five years of

---

[2] A copy of the Plea Agreement without Moody's signature or that of his counsel is in the appendix filed with Moody's brief. (A. 24-30).

supervised release, to run concurrently with the other sentence of supervised release. (Dkt. 88 at 36, 41). Judgments were entered in both cases on October 6, 2021. (A. 2-8; Ex. B).

7. On October 15, 2021, Moody timely filed a notice of appeal of the judgment in case number 19 Cr. 112. (A. 1). Moody did not file a notice of appeal in case number 10 Cr. 1160.

8. On November 2, 2022, Moody filed in this Court a brief arguing that his total sentence of 230 months' imprisonment was substantively unreasonable. (Br. 11-24).

9. Moody is serving his sentence.

## STATEMENT OF FACTS

**A.    The Offense Conduct**

10. For approximately three years, from shortly after his release from custody in June 2015—when he began a term of supervised release—until his arrest in June 2018, Moody operated a sophisticated drug trafficking organization out of a townhouse in the Bronx. He hired, supervised, and directed more than 10 other individuals, who worked out of the lower floors of the townhouse, cooking crack cocaine; bagging crack cocaine, heroin, and marijuana for retail distribution; and selling those drugs in retail quantities to a large number of drug customers. Moody's

drug operation was a booming business; customers often waited on lines outside the townhouse to buy drugs. (PSR ¶¶ 12, 14, 15, 16, 17, 20, 21.)

11.     Moody lived in and controlled all of the townhouse. In April 2018, law enforcement agents searched the basement of the townhouse pursuant to a state warrant. The agents recovered from the basement, where Moody and his employees worked, approximately 113 small plastic bags of crack cocaine; approximately 24 small plastic bags of marijuana; approximately $571 in cash; and two two-way radios, which were used in Moody's narcotics operation. Moody was undeterred; he continued to sell drugs from the townhouse after the search much as he had before. (PSR ¶¶ 13, 14, 15, 16, 17, 20, 21.)

12.     In June 2018, law enforcement agents executed a search warrant for all of the townhouse. They recovered from the townhouse, among other things, large quantities of crack cocaine (more than the 280 grams required for (b)(1)(A) penalties); distribution-level quantities of heroin and marijuana; approximately $34,382 in cash; several drug ledgers; and a defaced .45 caliber semi-automatic Taurus Model 1911 pistol. Moody was found in the townhouse and arrested for violating the terms of his supervised release. (PSR ¶ 22.)

## B.     The Plea Agreement and Guilty Plea

13.     On October 19, 2019, Moody pleaded guilty in case number 19 Cr. 112 to Count One of the Indictment, pursuant to the Plea Agreement. (Dkt. 34). The Plea

Agreement included a stipulated calculation under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), in which the parties agreed that the applicable total offense level was 39, and that Moody was in Criminal History Category VI because he had 13 criminal history points. The parties further agreed that those calculations yielded an advisory Guidelines range of 360 months' to life imprisonment (the "Stipulated Guidelines Range"). (Ex. A at 2-4; A. 25-27).

14.     In the Plea Agreement, Moody agreed not to "file a direct appeal . . . of any sentence within or below the Stipulated Guidelines Range of 360 months' to life imprisonment." Moody also agreed "not to appeal any term of supervised release that is less than or equal to the statutory maximum" or "any fine that is less than or equal to $10,000,000." (Ex. A at 5; A. 28).

15.     At the plea proceeding, before recommending that Judge Berman accept Moody's plea, Judge Cott conducted a careful allocution that complied with Federal Rule of Criminal Procedure 11. (Dkt. 34 at 2-18).

16.     Judge Cott established that Moody understood and agreed to waive his right to enter his plea before a district judge, rather than a magistrate judge. Next, Judge Cott established that Moody was competent to plead guilty. Moody then confirmed to Judge Cott that he had reviewed and understood the Indictment, that he had discussed with his attorney the charge against him and how he wished to

plead, and that he was satisfied with his attorney's representation. (Dkt. 34 at 2-5, 18).

17.     Judge Cott also confirmed that Moody understood the rights he would be giving up by pleading guilty, including his rights (a) to plead not guilty and persist in that plea; (b) to a speedy and public jury trial, at which he would be presumed innocent unless the Government proved him guilty beyond a reasonable doubt; (c) to the assistance of counsel, including appointed counsel, at trial and at every other stage of the proceeding; (d) to confront and cross-examine the Government's witnesses; (e) to testify, present evidence, and compel the attendance of witnesses; and (f) against compelled self-incrimination. (Dkt. 34 at 8-10).

18.     Judge Cott reviewed the charge to which Moody was going to plead guilty and the Government recited the elements of the offense. Judge Cott also advised Moody of the maximum and mandatory minimum penalties that Moody faced by pleading guilty. (Dkt. 34 at 6, 14-15).

19.     Judge Cott further established that Moody understood how the Guidelines might apply to Moody's case, that the Guidelines were advisory, and that the sentencing judge would be required to calculate the Guidelines and to consider them, among many other factors, in determining the appropriate sentence. (Dkt. 34 at 12-13).

20.     Judge Cott confirmed that Moody had reviewed the Plea Agreement with his attorney, and that Moody had signed the Plea Agreement knowingly and voluntarily. (Dkt. 34 at 11-13).

21.     Judge Cott, who had emphasized to Moody the importance of Moody understanding every question before he answered it, asked Moody whether he understood "that under the terms of the plea agreement -- and this is on page 5 -- if the judge sentences you within or below the stipulated guideline range of 360 months to life imprisonment, you'll be giving up your right to appeal that sentence or to challenge it in any other way, such as through a writ of habeas corpus." Moody answered: "Yes, your Honor." (Dkt. 34 at 3, 13).

22.     Judge Cott confirmed that aside from the Plea Agreement, no promises had been made to Moody in connection with his guilty plea. (Dkt. 34 at 12).

23.     Judge Cott ensured that an adequate factual basis supported Moody's plea. (Dkt. 34 at 14-17).

24.     At the end of the proceeding, Judge Cott found that Moody was "entirely competent . . . to enter an informed plea at this time"; that he "understands the nature of the charge and the consequences of his plea"; that the plea was "voluntary"; and "there is a factual basis for it." Accordingly, Judge Cott recommended that Judge Berman accept Moody's guilty plea. (Dkt. 34 at 18-19).

8

25.     On November 12, 2019, Judge Berman accepted Moody's plea after asking several follow-up questions to, among other things, confirm that Moody understood that Judge Berman would consider the applicable Guidelines range and the Section 3553(a) factors in imposing sentence. In Judge Berman's written order accepting the plea he found that Moody "entered the guilty plea knowingly and voluntarily and that there was a factual basis for" it. (Dkt. 38 at 2-5; Dkt. 36).

26.     During the same November 12, 2019 proceeding at which Judge Berman accepted Moody's guilty plea in case number 19 Cr. 112, Moody also pleaded guilty to a violation of supervised release in case number 10 Cr. 1160 based on his commission of the crime of narcotics conspiracy. (*See* A. 45). After a careful allocution, Judge Berman concluded that "Mr. Moody is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis which in fact supports each of the essential elements of the . . . probation specification. The plea is therefore accepted and Mr. Moody is now adjudged guilty of that offense." (Dkt. 38 at 6-21).

## C.     The Sentencing

27.     Consistent with the Plea Agreement, the Probation Office determined that the Guidelines offense level in case number 19 Cr. 112 was 39, that Moody was

in Criminal History Category VI, and that the applicable Guidelines range was 360 months' to life imprisonment. (PSR ¶¶ 27-38, 40-51, 111).

28. In advance of sentencing, Moody argued for a sentence of 120 months' imprisonment, which was the mandatory minimum sentence. Moody's submission emphasized the "life circumstances that served to derail the life of Andrew Moody and influenced his entre[e] into criminal conduct"; the harshness of the conditions of his presentence detention; his illness due to COVID-19; the "positive steps" Moody had taken while awaiting sentencing; and the hardship to Moody's children resulting from his incarceration. (A. 54-55, 64-88). Moody also provided the District Court with letters from family members and friends, and documents from the Bureau of Prisons. (A. 89-119).

29. The Government requested that Judge Berman impose in case number 19 Cr. 112 "a very substantial sentence," above the mandatory minimum of 120 months' imprisonment but below the Guidelines range of 360 months' to life imprisonment, and in case number 10 Cr. 1160 a consecutive sentence within the applicable Guidelines range of 51 to 63 months' imprisonment. (A. 150-54).

30. On October 6, 2021, the parties appeared for sentencing. At the outset of the proceeding, Judge Berman said, "So, as you all know, the matter is on for sentencing today for essentially two offenses." (Dkt. 88 at 2).

31.     Judge Berman then engaged in a lengthy discussion of the § 3553(a) factors, which he explained would "take a while because I've delved into all, the many factors and then some I thought were relevant." Among other things, Judge Berman summarized Moody's offense conduct, personal history and upbringing, medical history, drug abuse and addiction history, criminal history, employment history, and activities while incarcerated. (Dkt. 88 at 3-8; *see also id*. at 15-16).

32.     Next, Judge Berman summarized the parties' sentencing submissions, including the sentences each party requested. (Dkt. 88 at 8-14).

33.     After establishing that there were no unresolved objections to the facts in the Presentence Report, Judge Berman heard Moody and his counsel. Moody's counsel emphasized Moody's difficult upbringing, capacity for redemption, respect for the law, and evolution during his detention. (Dkt. 88 at 18-28). Moody expressed his remorse. (Dkt. 88 at 28-30).

34.     The Government emphasized, among other things, Moody's violation of the trust placed in him while on supervised release, the harm his actions caused the community, and his lengthy and serious criminal history. In response to defense counsel's argument that Moody's guilty plea was an act of redemption, the Government explained that Moody's plea to only Count One of the Indictment permitted him to avoid the mandatory 25-year consecutive sentence that would have

followed Moody's conviction on Count Three of the Indictment, which would have been his second conviction under 18 U.S.C. § 924(c). (Dkt. 88 at 30-34; A. 19).

35.    Judge Berman adopted the findings of fact in the Presentence Report and determined, consistent with the Plea Agreement, that the Guidelines range in case number 19 Cr. 112 was 360 months' to life imprisonment. Judge Berman then stated his intention to sentence Moody to 180 months' imprisonment in case number 19 Cr. 112, 180 months lower than the bottom of the Guidelines range, and 50 months' imprisonment on the violation of supervised release in case number 10 Cr. 1160, one month lower than the bottom of the Guidelines range, to run consecutively, as well as two five-year terms of supervised release to run concurrently. (Dkt. 88 at 35-36). Judge Berman explained "this sentence is appropriate first given the seriousness, the very seriousness of both offenses, . . . and the need for deterrence hopefully, specific and general deterrence and the need for punishment." Judge Berman further explained that he "recognize[d] that there are other factors, a very positive nature with respect to Mr. Moody as we discussed earlier." He further noted that he had "considered the nature and the circumstances of the crime. It is, as I say, very serious and poses a danger to the community. It's obvious." Judge Berman also explained that he had "considered the history and characteristics of Mr. Moody with some care," and he "believe[d] that the sentence imposed reflects the seriousness of the offense, two of them"; "promotes respect for

12

the law"; "provides a just punishment"; "affords I think adequate deterrence"; "protects the public from further crimes"; and "provides Mr. Moody with the opportunity for educational and vocational training, medical care and other correctional treatment, most particularly, individual and group therapy and drug treatment." (Dkt. 88 at 39-40).

36.     Judge Berman also advised Moody of his right to appeal "to the extent you have not already waived your appeal rights pursuant to the plea agreement," and noted that in the Plea Agreement, "Mr. Moody has waived his right to file a direct appeal . . . [of] any sentence that is within or below the stipulated guideline range of 360 months to life imprisonment." (Dkt. 88 at 42-43).

## ARGUMENT

## I.     The Appeal Should Be Dismissed Because Moody Knowingly and Voluntarily Waived His Right to Appeal

37.     Moody knowingly and voluntarily pleaded guilty and entered into the Plea Agreement. The Plea Agreement's appellate waiver, which is valid on its face, bars Moody's arguments challenging the reasonableness of his sentence in case number 19 Cr. 112. The appeal should be dismissed pursuant to the waiver.

### A.     Applicable Law

38.     "'Waivers of the right to appeal a sentence are presumptively enforceable . . . .'" *United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021) (quoting

*United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010)); *see United States v. Riggi*, 649 F.3d 143, 147-48 (2d Cir. 2011); *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008); *United States v. Roque*, 421 F.3d 118, 121 (2d Cir. 2005); *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995); *United States v. Salcido-Contreras*, 990 F.2d 51, 52-53 (2d Cir. 1993).

39.     The "exceptions to the presumption of the enforceability of a waiver" are exceptionally limited and "occupy a very circumscribed area of [this Court's] jurisprudence." *Gomez-Perez*, 215 F.3d at 319; *accord Borden*, 16 F.4th at 354-55. This Court has declined to enforce such waivers "only in very limited situations, 'such as when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence.'" *Arevalo*, 628 F.3d at 98 (quoting *Gomez-Perez*, 215 F.3d at 319).

40.     Accordingly, this Court has continually "upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Gomez-Perez*, 215 F.3d at 319; *see United States v. Rosa*, 123

14

F.3d 94, 97, 101-02 (2d Cir. 1997); *United States v. Coston*, 737 F.3d 235, 236-38 (2d Cir. 2013) (per curiam); *Arevalo*, 628 F.3d at 97; *United States v. Ruiz*, 272 F. App'x 19, 20-21 (2d Cir. 2008); *United States v. DeJesus*, 219 F.3d 117, 120-21 (2d Cir. 2000); *Yemitan*, 70 F.3d at 746, 748; *United States v. Buissereth*, 638 F.3d 114, 117-18 (2d Cir. 2011).

41.     That an appellate waiver was knowing and voluntary can be established by demonstrating that the defendant's attention was drawn during the plea hearing to the plea agreement's waiver provision. *See, e.g., DeJesus*, 219 F.3d at 121 (rejecting defendant's contention that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy).

**B.     Discussion**

42.     In the Plea Agreement, Moody expressly waived his right to appeal any sentence within or below the Stipulated Guidelines Range of 360 months' to life imprisonment. (Ex. A at 5). During Moody's plea proceeding, Judge Cott highlighted the appellate-waiver provision of the Plea Agreement and confirmed that Moody understood he was waiving his right to appeal or otherwise challenge a sentence "within or below the stipulated guideline range of 360 months to life imprisonment." (Dkt. 34 at 13). Before confirming that understanding, Judge Cott had confirmed that Moody had read the Plea Agreement and discussed it with his

lawyer, who had explained to him "all of its terms and conditions," (*id.* at 12-13), had confirmed that Moody was competent, (*id.* at 3-5), and had confirmed that Moody was acting voluntarily, (*id.* at 11-12). Because Moody's waiver was competent, knowing and voluntary, and because Judge Berman sentenced Moody within the waiver's unambiguous terms, Moody's appeal should be dismissed.

43. None of the limited exceptions to the enforceability of appellate waivers applies here. As just discussed, Moody waived his appellate rights "knowingly, voluntarily, and competently." *Gomez-Perez*, 215 F.3d at 319. The District Court did not impose a sentence "based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases," nor has the Government "breached the plea agreement." *Id.*

44. The District Court also did not "fail[] to enunciate any rationale for the defendant's sentence." *Id.* To the contrary, as described above, Judge Berman detailed his analysis of the Section 3553(a) factors and the reasons he was imposing a sentence of 180 months' imprisonment. (Dkt. 88 at 4-8, 15-16, 39-40).

45. Moody recognizes, briefly, that the Government will say that he has waived his appellate rights, (Br. 20), but argues that because "factors related to [his] background" were not "meaningfully considered" in "relation to the Guidelines" or "a sentence at variance with the Guidelines," "the right to individualized sentencing [wa]s violated." (*Id.*).

16

46. Moody cites no authority in support of his claim that an alleged failure to "meaningfully" consider aspects of a defendant's history and characteristics permits the defendant to bring an appeal he has waived. And the Government is aware of none. This Court has held that "[t]he decisive considerations motivating [this Court's] decision to enforce, *vel non,* an appeal waiver are the nature of the right at issue and whether the sentence was reached in a manner that the plea agreement did not anticipate." *Coston*, 737 F.3d at 237.

47. While a "violation of a fundamental right warrants voiding an appeal waiver," *Riggi*, 649 F.3d at 147, Moody has identified no such fundamental right. To the contrary, his

> appeal raises one single issue: Andrew Moody argues that his term of imprisonment of 230 months imprisonment was *substantively* unreasonable because it did not sufficiently account for or give meaningful consideration to the devastating conditions and trauma that he endured as an African American child growing up in one of our nation's devastating *de facto* segregated ghettos, communities that resulted from purposeful racial policies of social and economic exclusion with resulting poverty and ensuing criminality.

(Br. 3). "This failure to adequately credit mitigation," Moody claims, resulted in a "sentence that is shocking and unreasonable." (Br. 24). But a defendant has no fundamental right to have a sentencing court credit "adequately" a factor the defendant claims is mitigating. To the contrary, "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the

17

discretion of the sentencing judge." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012); *accord United States v. Keitt*, 21 F.4th 67, 72 (2d Cir. 2021) (per curiam). This Court cannot "require that a particular factor be given determinative or dispositive weight," *United States v. Halvon*, 26 F.4th 566, 571 (2d Cir. 2022) (per curiam), and "[m]ere disagreement with "how the district court balanced the § 3553(a) factors . . . is not a sufficient ground for finding an abuse of discretion," *id.* at 569. Thus, a defendant has no fundamental right to have a sentencing court give to a particular Section 3553(a) factor the weight the defendant thinks that factor should be given.

48.    Nor was Moody's sentence "reached in a manner that the plea agreement did not anticipate." *Coston*, 737 F.3d at 237. To the contrary, Judge Berman found that the applicable Guidelines sentencing range was exactly the same range as that described in the Plea Agreement, (*compare* Dkt. 88 at 36 *with* Exh. A at 4), and then sentenced Moody to a term of imprisonment half the bottom end of that range, (Dkt. 88 at 41). Even when the sentences for case numbers 19 Cr. 112 and 10 Cr. 1160 are combined, Moody still received a term of imprisonment 130 months, or almost 11 years, below the bottom end of the Stipulated Guidelines Range in the Plea Agreement. Moody's sentence was not reached in a manner that the Plea Agreement did not anticipate. *See Rosa*, 123 F.3d at 101-02 ("While receipt of the expected benefits of a plea is, of course, not in and of itself a reason to hold a

defendant to a plea agreement which is otherwise invalid, . . . it goes to the overall fairness, and thereby the validity, of that agreement."); *accord United States v. Willard*, 588 F. App'x 78, 79 (2d Cir. 2015); *United States v. Koehn*, 580 F. App'x 46, 47 (2d Cir. 2014).

49. As this Court has recognized:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

*Salcido-Contreras*, 990 F.2d at 53. Accordingly, Moody's appeal should be dismissed.

## II. This Court Does Not Have Jurisdiction To Review Moody's Sentence For The Violation of Supervised Release

50. Moody's brief also appears to challenge the 50-month consecutive sentence of imprisonment that Judge Berman imposed in case number 10 Cr. 1160 for Moody's admitted violation of his supervised release. (Br. 11, 17-20, 23-24).[3]

---

[3] In the argument section of his brief, Moody incorrectly claims that Judge Berman imposed a "statutory maximum" sentence of 60 months' imprisonment. (Br. 17-19, 23-24). But earlier in his brief Moody recognizes, correctly, that this was a 50-month sentence. (Br. 3, 13).

However, Moody neither filed a notice of appeal of the judgment in case number 10 Cr. 1160 nor referred to that case in the notice of appeal he did file. (A. 1).

51.     Federal Rule of Appellate Procedure 3(c)(1)(B) provides that "[t]he notice of appeal must: . . . designate the judgment—or the appealable order—from which the appeal is taken."[4] This rule's "dictates are jurisdictional in nature," *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012), "and not waivable," *United States v. Caltabiano*, 871 F.3d 210, 215 (2d Cir. 2017). *See PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79, 87 (2d Cir. 2019) ("We generally lack jurisdiction to review a decision that was not mentioned in the notice of appeal."); *Johnson v. Perry*, 859 F.3d 156, 167 (2d Cir. 2017) ("[T]he contents of the notice of appeal define the scope of the appellate court's jurisdiction."); *Shrader v. CSX Transp., Inc.*, 70 F.3d

---

[4] This language was adopted effective December 1, 2021, but the Supreme Court ordered that it govern both in all appellate proceedings thereafter commenced and "insofar as just and practicable, [in] all proceedings then pending." *See* Proposed Amendments to the Federal Rules of Appellate Procedure, Rules 3 and 6 and Forms 1 and 2, 337 F.R.D. 813, 814. Moody's appeal was commenced a month and a half before December 1, 2021. (A. 1). The prior version of Rule 3(c)(1)(B) was not materially different for purposes of this motion, as it required that a notice of appeal "'designate the judgment, order, or part thereof being appealed.'" *Persico v. Cassadei*, No. 21-16-CV, 2021 WL 5500089, at *1 (2d Cir. Nov. 24, 2021) (summary order) (quoting Fed. R. App. P. 3(c)(1)(B)). Accordingly, consistent with the Supreme Court's mandate, the Government has used the current version of Rule 3(c)(1)(B).

255, 256 (2d Cir. 1995) ("[A]ppellant's failure to mention the August 1 order in his notice of appeal bars us from considering his claim" with respect to that order.).

52.   The Supreme Court has held that "when papers are technically at variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires. This principle of liberal construction does not, however, excuse noncompliance with the Rule." *Smith v. Barry*, 502 U.S. 244, 248 (1992). And this Court will "take the parties' intentions into account when construing a notice of appeal and will find jurisdiction when the intent to appeal from a decision is clear on the face of, or can be inferred from, the notice of appeal." *United States v. White*, 7 F.4th 90, 97 n.29 (2d Cir. 2021).

53.   Moody's notice of appeal is not "the functional equivalent of what the rule requires" for an appeal from a separate case in which a separate judgment was entered. *Smith*, 502 U.S. at 248. The rule required Moody to "designate the judgment . . . from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). The judgment in case number 10 Cr. 1160 is nowhere designated in the notice of appeal; to the contrary, only case number 19 Cr. 112 is listed. (A. 1). Nor is an intent to appeal from case number 10 Cr. 1160 clear on the face of, or inferable from, the notice of appeal that was filed, which, again, lists only case number 19 Cr. 112. (*Id.*). It is particularly difficult to infer an intent to appeal two judgments from a notice of

appeal that designates only one given that nine days earlier during sentencing, Judge Berman repeatedly referred to the two cases he was resolving by their separate docket numbers, (Dkt. 88 at 7, 11, 14, 17, 36, 39, 41), leaving little room for doubt that he was sentencing Moody in two different cases, in which two judgments would be, and were, entered.

54.    The Sixth Circuit has found that it lacked jurisdiction in a situation very much like this one. *United States v. Velasquez-Perez*, 53 F. App'x 735, 737 (6th Cir. 2002). And while the Seventh Circuit reached the opposite conclusion, *see United States v. Taylor*, 628 F.3d 420, 424 (7th Cir. 2010); *United States v. Beltran-Figueroa*, 440 F. App'x 509, 510 (7th Cir. 2011), since those decisions Rule 3 has been amended to eliminate various "trap[s] for the unwary." Fed. R. App. P. 3 advisory committee's note to 2021 amendment. The requirement that "[t]he notice of appeal must: . . . designate the judgment . . . from which the appeal is taken" was not changed, however, *see* Fed. R. App. P. 3(c)(1)(B), indicating that meeting this requirement is not a "trap for the unwary," but a step necessary to invoke this Court's jurisdiction.

55.    To the extent Moody's appeal challenges the sentence imposed for his violation of supervised release, it should be dismissed for lack of jurisdiction.

## CONCLUSION

56.     Moody's appeal should be dismissed.[5]

Dated:       New York, New York
             February 1, 2023

_Robert B. Sobelman_
ROBERT B. SOBELMAN
Assistant United States Attorney
Telephone: (212) 637-2616

---

[5] Should the Court deny this motion, the Government respectfully requests 60 days from the date of that denial to file a response to Moody's appeal.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 5,188 words in this motion.

DAMIAN WILLIAMS,
United States Attorney for the
Southern District of New York


By:  ROBERT B. SOBELMAN
Assistant United States Attorney
(212) 637-2616

# EXHIBIT A



**U.S. Department of Justice** ORIGINAL

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 29, 2019

**BY EMAIL**

Anthony L. Ricco, Esq.
20 Vesey Street
New York, New York 10007
tonyricco@aol.com

  **Re:**   ***United States v. Andrew Moody*, 19 Cr. 112 (RMB)**

Dear Mr. Ricco:

  On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Andrew Moody ("the defendant") to Count One of the above-referenced Indictment ("the Indictment"). Count One charges the defendant with participating in a conspiracy to distribute and possess with intent to distribute (a) 280 grams and more of cocaine base; (b) heroin, and (c) marijuana, in violation of 21 U.S.C. § 841(b)(1)(A), 841(b)(1)(C), and 846. Count One carries a maximum term of imprisonment of life; a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3571, of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

  In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for participating in a conspiracy to distribute cocaine base, heroin, and marijuana, from 2015 until June 2018, as charged in Count One, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

  The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to 21 U.S.C. § 853, (i) a sum of money equal to $100,000 in United States currency, representing proceeds traceable to the

commission of said offense (the "Money Judgment"); and (ii) all right, title and interest of the defendant in the following specific property: $34,382 in cash seized from the defendant's residence on or about June 22, 2018 (the "Specific Property"). The defendant agrees that he will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. The defendant also agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the execution of all necessary documentation. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit 1 and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

**A. Offense Level**

1. The Guidelines Manual in effect as of November 1, 2018 applies to this case.

2. The Guidelines applicable to Count One is U.S.S.G. § 2D1.1.

3. Pursuant to U.S.S.G. § 2D1.1 Application Note 8(B), the Drug Equivalency Tables are a means of combining different controlled substances to obtain a single offense level. The offense involved the following quantities of controlled substances, which are the equivalent of the following converted drug weight pursuant to U.S.S.G. § 2D1.1 Application Note 8(D):

| **Controlled Substance** | **Quantity/Weight** | **Converted Drug Weight** |
|---|---|---|
| Cocaine base | 8 kilograms | 28,568 kilograms |
| Fentanyl[1] | 8.33 grams | 20.83 kilograms |
| Marijuana | 647 grams | 647 grams |
| **Total** | | **28,589.48 kilograms** |

4. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(3), the base offense level for Count One is 34 because the offense involved at least 10,000 kilograms but less than 30,000 kilograms of cocaine base.

5. Pursuant to U.S.S.G. § 2D1.1(b)(1), the offense level is increased by two levels because a dangerous weapon (i.e., a firearm) was possessed.

---

[1] The heroin for which the defendant is responsible was mixed with fentanyl. Accordingly, pursuant to Note A to the Drug Quantity Table, the mixture is treated as fentanyl for purposes of the Guidelines.

6.  Pursuant to U.S.S.G. § 2D1.1(b)(12), the offense level is increased by two levels because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

7.  Pursuant to U.S.S.G. § 3B1.1(a), the offense level is increased by four levels because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

8.  Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 39.

**B. Criminal History Category**

Based upon the information now available to this Office (including representations by the defense), the defendant has 13 criminal history points, calculated as follows:

1.  On or about May 24, 2011, the defendant was convicted in the United States District Court for the Southern District of New York of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The defendant was sentenced to five years' imprisonment and five years of supervised release. Pursuant to U.S.S.G. § 4A1.1(a), three criminal history points are added.

2.  On or about May 29, 2008, the defendant was convicted in Bronx County Supreme Court of criminal possession of a controlled substance in the fifth degree, a felony, in violation of New York Penal Law § 220.06; and criminal possession of a controlled substance in the fifth degree, a felony, in violation of New York Penal Law § 220.06[5]. On June 17, 2008, the defendant was sentenced to 18 months' imprisonment on both counts, to run concurrently. Pursuant to U.S.S.G. § 4A1.1(a), three criminal history points are added.

3.  On or about January 5, 2007, the defendant was convicted in Bronx County Criminal Court of criminal trespass in the second degree, a misdemeanor, in violation of New York Penal Law § 140.10[A]. The defendant was sentenced to five days' imprisonment. Pursuant to U.S.S.G. § 4A1.1(c), one criminal history point is added.

4. On or about October 24, 2006, the defendant was convicted in Bronx County Supreme Court of assault in the third degree with intent to cause physical injury, a misdemeanor, in violation of New York Penal Law § 120.00[1]; and criminal possession of a weapon in the fourth degree, a misdemeanor, in violation of New York Penal Law § 265.01[2]. The defendant was sentenced to 60 days' imprisonment for the former conviction and one year of imprisonment for the latter, to run concurrently. Pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are added.

5. On or about October 27, 2004, the defendant was convicted in Bronx County Supreme Court of criminal sale of a controlled substance in the fifth degree, a felony, in violation of New York Penal Law § 220.31. The defendant was sentenced to nine months' imprisonment. Pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are added.

6. Pursuant to U.S.S.G. § 4A1.1(d), two criminal history points are added because the defendant committed the instant offense while under any criminal justice sentence, that is, the term of supervised release referenced in above in Part B(1).

In accordance with the above, the defendant's Criminal History Category is VI.

**C. Sentencing Range**

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 360 months' to life imprisonment, with a mandatory minimum term of 120 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 39, the applicable fine range is $50,000 to $10,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the

defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 360 months' to life imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $10,000,000, and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal any forfeiture amount that is less than or equal to $100,000, and the Government agrees not

to appeal any forfeiture amount that is greater than or equal to $100,000. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of

limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By:

Robert B. Sobelman
Assistant United States Attorney
(212) 637-2616

APPROVED:

Shawn G. Crowley
Co-Chief, Narcotics Unit

AGREED AND CONSENTED TO:

Andrew Moody

10/29/2019
DATE

APPROVED:

Anthony L. Ricco, Esq.
Attorney for Andrew Moody

10/29/2019
DATE

2019.07.08

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA     :    CONSENT PRELIMINARY
:    ORDER OF FORFEITURE
- v. -    :    AS TO SPECIFIC PROPERTY/
:    MONEY JUDGMENT
ANDREW MOODY,    :
    a/k/a "J.R.,"    :    19 Cr. 112 (RMB)
:
Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, on or about February 20, 2019, ANDREW MOODY, a/k/a "J.R.,"

(the "Defendant"), was charged in a five-count Indictment, 19 Cr. 112 (the "Indictment"), with

conspiracy to distribute and possess with an intent to distribute (i) 280 grams and more of mixtures

and substances containing a detectable amount of cocaine base, and (ii) mixtures and substances

containing a detectable amount of heroin, in violation of Title 21, United States Code,

Section 841(Count One); possession with intent to distribute and distribution of 280 grams and

more of mixtures and substances containing a detectable amount of cocaine base, in violation of

Title 21, United States Code, Section 841(b)(1)(A)(Count Two); possession of a firearm in

furtherance of a drug trafficking crime, in violation of Title 18, United States Code,

Sections 924(c)(1)(A), 924(c)(1)(C)(i), and 2 (Count Three); possession of a firearm by a

prohibited person, in violation of Title 18, United States Code, Sections 922(g)(1) and 2

(Count Four); and possession of a firearm with serial number removed, obliterated, and altered, in

violation of Title 18, United States Code, Sections 922(k) and 2;

WHEREAS, the Indictment included a forfeiture allegation as to Counts One and

Two, seeking forfeiture to the United States, pursuant to Title 21, United States Code, Section 853,

of any and all property constituting, or derived from, any proceeds obtained, directly or indirectly,

as a result of the offenses charged in Counts One and Two of the Indictment, and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offenses charged in Counts One and Two of the Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offenses charged in Counts One and Two of the Indictment, and $34,382.00 in United States currency seized by law enforcement agents on or about June 22, 2018, from the Defendant's residence located in the Bronx, New York;

WHEREAS, on or about July ____ 2019, the Defendant pled guilty to Count One of the Indictment, pursuant to a plea agreement with the Government, wherein the Defendant admitted the forfeiture allegation with respect to Count One of the Indictment and agreed to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, the following proceeds traceable to the commission of the offense charged in Count One of the Indictment: (i) a sum of money equal to $100,000.00 in United States currency, and (ii) $34,382.00 in United States currency seized from the Defendant's residence on or about June 22, 2018 (the "Specific Property");

WHEREAS, the Defendant consents to the entry of a money judgment in the amount of $100,000.00 in United States currency representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained;

WHEREAS, the Defendant further consents to the forfeiture of all of his right, title and interest in the Specific Property, which constitutes proceeds traceable to the commission of the offense charged in Count One of the Indictment;

WHEREAS, the Defendant admits that, as a result of acts and/or omissions of the Defendant, the proceeds traceable to the offense charged in Count One of the Indictment cannot be located upon the exercise of due diligence, with the exception of the Specific Property; and

WHEREAS, pursuant to Title 21, United States Code, Section 853(g), and Rules 32.2(b)(3), and 32.2(b)(6) of the Federal Rules of Criminal Procedure, the Government is now entitled, pending any assertion of third-party claims, to reduce the Specific Property to its possession and to notify any and all persons who reasonably appear to be a potential claimant of their interest herein;

IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, by its attorney Geoffrey S. Berman, United States Attorney, Assistant United States Attorney Robert B. Sobelman of counsel, and the Defendant, and his counsel, Anthony L. Ricco, Esq., that:

1.  As a result of the offense charged in Count One of the Indictment, to which the Defendant pled guilty, a money judgment in the amount of $100,000.00 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count One of the Indictment that the Defendant personally obtained, shall be entered against the Defendant.

2.  As a result of the offense charged in Count One of the Indictment, to which the Defendant pled guilty, all of the Defendant's right, title and interest in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853.

3.  Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment is final as to the

Defendant, ANDREW MOODY, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

4. All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Transnational Criminal Enterprises Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the Defendant's name and case number.

5. The United States Marshals Service is authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

6. Upon entry of this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, the United States (or its designee) is hereby authorized to take possession of the Specific Property and to hold such property in its secure custody and control.

7. Pursuant to Title 21, United States Code, Section 853(n)(1), Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, and Rules G(4)(a)(iv)(C) and G(5)(a)(ii) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, the United States is permitted to publish forfeiture notices on the government internet site, www.forfeiture.gov. This site incorporates the forfeiture notices that have been traditionally published in newspapers. The United States forthwith shall publish the internet ad for at least thirty (30) consecutive days. Any person, other than the Defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of the Notice on this official government internet web site, or no later than thirty-five (35) days from the mailing of actual notice, whichever is earlier.

8.      The published notice of forfeiture shall state that the petition (i) shall be for a hearing to adjudicate the validity of the petitioner's charged interest in the Specific Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the nature and extent of the petitioner's right, title or interest in the Specific Property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property, any additional facts supporting the petitioner's claim, and the relief sought, pursuant to Title 21, United States Code, Section 853(n).

9.      Pursuant to 32.2 (b)(6)(A) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

10.      Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n), in which all interests will be addressed. All Specific Property forfeited to the United States under a Final Order of Forfeiture shall be applied towards the satisfaction of the Money Judgment.

11.      Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas.

12.      The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

13.     The Clerk of the Court shall forward three certified copies of this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment to Assistant United States Attorney Alexander J. Wilson, Co-Chief, Money Laundering & Transnational Criminal Enterprises Unit, United States Attorney's Office, One St. Andrew's Plaza, New York, NY 10007.

14.     The signature page of this Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

AGREED AND CONSENTED TO:

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____          _____
      Robert B. Sobelman                                          DATE
      Assistant United States Attorney
      One Saint Andrews Plaza
      New York, NY 10007
      (212) 637-2616

ANDREW MOODY

By: _____          10/29/2019
      ANDREW MOODY                                      DATE

By: _____          10/29/2019
      Anthony L. Ricco, Esq.                              DATE
      20 Vesey Street
      New York, NY 10007

SO ORDERED:


_____          _____
HONORABLE RICHARD M. BERMAN                DATE
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations   (form modified within District on Sept. 30, 2019)
                       Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | (For **Revocation** of Probation or Supervised Release) |
| Andrew Moody | |
| | Case No.   10 cr 1160 |
| | USM No. 63901-054 |
| | Anthony Ricco |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ admitted guilt to violation of condition(s)  ___10___  of the term of supervision.

☐ was found in violation of condition(s) count(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 10 | commission of a crime | 06/22/2018 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has not violated condition(s) __any open__ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.: 2114

Defendant's Year of Birth:   1984

City and State of Defendant's Residence:
unknown

10/06/2021
Date of Imposition of Judgment

*RMB*

Signature of Judge

Richard M. Berman, U.S.D.J.
Name and Title of Judge

10/06/2021
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/21

AO 245D (Rev. 09/19) Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

Judgment — Page __2__ of __5__

DEFENDANT: Andrew Moody
CASE NUMBER: 10 cr 1160

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
50 months to run consecutively with the (180 months) term of imprisonment imposed on docket 19 cr 112.

☑ The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant be placed in a facility close to New York City.  It is also recommended that the defendant participate in the BOP Challenge Program if he meets the criteria for entry into such a program.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
                       Sheet 3 — Supervised Release

Judgment—Page  3  of  5

DEFENDANT:  Andrew Moody
CASE NUMBER:  10 cr 1160

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

5 years to run concurrently with the term of supervised release imposed under 19 cr 112.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
                        Sheet 3A — Supervised Release

Judgment—Page __4__ of __5__

DEFENDANT:  Andrew Moody
CASE NUMBER:  10 cr 1160

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 3D — Supervised Release

Judgment—Page __5__ of __5__

DEFENDANT: Andrew Moody
CASE NUMBER: 10 cr 1160

## SPECIAL CONDITIONS OF SUPERVISION

1- Throughout the term of supervised release, defendant shall participate in weekly therapeutic individual counseling and weekly group counseling by a licensed therapist. The defendant may be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on ability to pay or availability of third party payment;

2- Throughout the term of supervised release, defendant shall participate in a program approved by the U.S. Probation Office for substance abuse which program shall include testing to determine whether the defendant has reverted to the use of drugs or alcohol. The defendant may be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on ability to pay or availability of third party payment;

3- Defendant shall submit his person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. Defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

4- Defendant shall be supervised in his district of residence;

5- Defendant shall report to probation within 24 hours of release from custody;

6- The terms of supervised release may not be modified without prior approval of the Court.