UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA        Docket. No. 21-2607

- against -        **DECLARATION IN OPPOSITION
TO MOTION TO DISMISS APPEAL**

ANDREW MOODY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK            )
COUNTY OF NEW YORK          : ss .:
SOUTHERN DISTRICT OF NEW YORK  )

      Anthony L. Ricco, Esq., pursuant to Title 28, United States Code, section 1746, hereby declares under the penalties of perjury:

      I am counsel for the Defendant-Appellant, Andrew Moody, and I make this declaration in opposition to the government's motion to dismiss his appeal.

### I. Procedural Background

<u>Original Proceedings in the District Court and Direcct Appeal to this Court</u>

      There is no dispute with the procedural history of the cas. I was retained to represent Andrew Moody in the original proceedings in the District Court and later on Appeal to the Second Circuit Court of Appeals, having filed a notice of appearance in this court under the above docket number, back on February 26, 2020, and I have served as his counsel through sentencing and the filing of a notice of appeal as requested by Andrew Moody.[1]

---

[1]     Present counsel was originally retained to represent Andrew Moody on his Violation of Supervised Release (VSOR) under docket number 10 Cr. 1160 (VEC), and filed a Notice of Appearance on July 25, 2018. Ultimately, Andrew Moody pleaded guilty to specification number 10 before the district court on November 12, 2019. Specification number 10 alleged that from June 2015 through the date of his arrest on June 22, 2018, Andrew Moody was engaged in a conspiracy to distribute narcotics in violation of 21 USC § 841 (b)(1)(C) and 846. The underlying conduct of the VSOR was later charged in count one of the indictment under docket number 19 Cr. 112 (RMB), upon

On October 29, 2019, Andrew Moody appeared before the Hon. James L. Cott, and pleaded guilty, pursuant to a written plea agreement, to the criminal conduct set forth under count one of the indictment of docket number 19 Cr. 112 (RMB), which alleged that from 2015 through his arrest on June 22, 2018, Andrew Moody conspired with others to distribute and possess with intent to distribute (a) 280 grams and more of cocaine base; (b) heroin, and (c) marijuana, in violation of 21 U.S.C. § 841(b)(1)(A), 841(b)(1)(C), and 846. See, *Transcript dated October 29, 2019, page 6, ECF No. 34 Filed on 11/08/19, at page 6 of 20.* On November 12, 2019, the plea allocution before Magistrate Judge Cott was accepted by the district court. See, *ECF No. 36, Filed 11/12/19.*

Two years later, on October 6, 2021, Andrew Moody appeared for sentencing before the district court and was sentenced to both 180 months imprisonment, under the above docket 19 Cr. 112, to run consecutive with 50 months term of imprisonment imposed under 10 Cr. 1160 (Violation of Supervised Release), for a total of 230 months, to be followed by a five (5) year term of supervised release (to be served concurrent under both dockets), as well as a $100 special assessment.

After the entry of his sentence, Andrew Moody directed counsel to file a Notice of Appeal on his behalf, although he waived his general rights to appeal as a condition of his plea agreement. Pursuant to Andrew Moody's direction, a timely Notice of Appeal was filed on October 15, 2021. See, *ECF No. 83, Filed 10/15/21.*

Andrew Moody instructed counsel that he wished to challenge the constitutionally of the method by which the court arrived at the imposition of the consecutive sentence, and the constitutional application of a sentence at variance as to both sentences under 18 U.S.C. §3553(a).

<u>Andrew Moody Has Requested That The Second Circuit Review The Sentence Imposed</u>

Andrew Moody, recognizes, as the government accurately points out, that his plea agreement contains a stipulated Guidelines range of 360 months to life, and that it also contains waiver of appeal

---

which Andrew Moody entered a guilty plea on October 29, 2021. See, *Transcript dated November 12, 2019, filed under 19 Cr. 112 (RMB), ECF No. 38 Filed on 12/11/19 page 1 of 22.*

2

should the court impose a sentence of 360 months or less. The government, placing procedural form over substance, is of the view that this waiver forecloses an appellate review of the fairness of the method upon which the district arrived at the ultimate sentence imposed of 230 months. Defense counsel is very much aware that there are very few instances where the Second Circuit will review a sentence where there has been a waiver of appeal.

In *United States v. Yemitan*, 70 F.3d 746, 747-49 (2d Cir. 1995), the Second Circuit recognized that a waiver of appellate rights does not foreclose appeal in every case; nevertheless, the Court rejected appellant's claim that a waiver was "unenforceable because the district court's sentence was illegal" in light of court's failure to explain sentence as required by 18 U.S.C. § 3553(c)(1)).

Later, in *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997), the Court stated, "[w]e have not held criminal defendants to their waivers of this right in every circumstance." The Second Circuit went on to state:

> Our oversight role permits us to accept appeal of a case where the sentence or the agreement calls for it, despite our preference for deferring to the parties' freedom to contract. We will certainly often be willing to set aside the waiver and accept appeal when constitutional concerns are implicated, whether those concerns be related to a particular constitutional provision such as the ex post facto clause, or whether it simply appears that the ultimate sentence is so far beyond the anticipated range that to deny the right of appeal would raise serious questions of fundamental fairness. We may also be willing to accept such an appeal for lesser improprieties, including abuse of judicial discretion. <u>We are not prepared today to outline an exhaustive list of the circumstances under which we would or would not accept such an appeal</u>. (Emphasis Added)

*United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997)

More recently in *United States v. Woltmann*, 610 F.3d 37 (2d Cir. 2010), the Second Circuit added two additional categories of cases where the Court may be willing to set aside a waiver and accept appeal - - those where the sentence was "reached in a manner that the plea agreement did not anticipate" or where the sentencing court "failed to enunciate any rationale for the defendant's sentence, thus

3

amounting to an abdication of judicial responsibility."

Additionally, other Circuits have different views regarding appellate waivers, which has not been addressed by the Supreme Court. For instance, the First, Third and Eighth Circuits recognize a "miscarriage of justice" exception to the validity of appellate waivers, which can beapplied in rare circumstances where the defendant would suffer a miscarriage of justice by enforcement of his plea agreement's appellate waiver. While the Second Circuit has not adopted such an exception, it has never expressly rejected it, either.

Tests for the validity of waivers of the right to appeal vary between districts. Some tests are quite vague but others are rather strict. The vague tests usually give a broad exception to the validity of the appellate waiver where a "miscarriage of justice" has occurred. The courts using a vague test - such as the First, Third, and Eighth Circuits - do not fully define the "miscarriage of justice" concept.

Instead of defining "miscarriage of justice," the Third Circuit follows the First Circuit's approach in setting forth factors to consider. These factors include: [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Andrew Moody wants to bring to this court's attention that the sentence imposed is far beyond the anticipated range that he thought would be fairly considered, and that the method in which the district court imposed a sentence which is 9.5 years above the applicable mandatory minimum raises serious questions of fundamental fairness afforded to him. Andrew Moody makes this assertion although his plea agreement clearly states that he would not appeal a sentence imposed of 360 months or less. Andrew Moody strongly asserts that although he agreed to the terms of the plea agreement, he firmly believed that the court would, in fact, be giving a fair and meaningful consideration of the factors related to his background and character as mandated by Congress and set forth in 18 U.S.C. §3553(a).

4

Although, on the surface, it does appear that the court gave these mandated statutory factors consideration, since the court imposed a total sentence of 230 months, which by definition is 130 months below the guideline range of 360 months, and in so doing, the court spoke of the extraordinary mitigation factors Andrew Moody endured during his life time, which included unimaginable childhood trauma, abandonment, alienation and abuse, along with his extraordinary post arrest efforts and participation with programs offered by the Bureau of Prisons.

However, a close review of the sentence imposed reveals that the court did not apply the 3553(a) factors in a fair, and meaningful manner. As a result, the court imposed a sentence almost twice the substantial mandatory minimum of 10 years.

In Andrew Moody's case, the court states that it went through the 3553(a) factors in arriving at a sentence related to his underlying offense, however, in the same proceeding, failed to apply any of those very same mitigation factors to the guidelines attributed to the violation of supervised release. The court also gave no reason, whatsoever, as to why the very same mitigation factors were not applied to the guidelines related to the violation of supervised release. The court then ruled that the arrived upon sentence for the violation of supervised release shall run consecutive to the sentence for the underlying offense, for a total of 230 months.

The government, apparently conceding the foregoing, argues that this court has no jurisdiction over the sentence imposed for the violation of supervised release, and therefore, Andrew Moody has no relief. Andrew Moody responds that the Second Circuit does have jurisdiction over the ultimate sentence imposed during the same proceeding, at the same time, to ensure that Andrew Moody was afforded fundamental fairness, and whether *the ultimate sentence imposed is so far beyond the anticipated range that to deny the right of appellate review would raise serious questions of fundamental fairness.*

Andrew Moody asserts that he anticipated he would be treated fairly at sentencing, and that in imposing the ultimate sentence, the court would employ a fair and equal application of the factors set

5

forth in 3553(a), and that in so doing arrive at a sentence sufficient but not greater than necessary to reach the sentencing goals of Congress. In his case, the violation for supervised release (the underlying drug offense) was inter-connected with the sentence for the underlying offense (a drug trafficking offense). In this case, Andrew Moody's guideline calculation applicable to the underlying offense was enhanced two levels as a result of the fact that the underlying offense took place while he was on supervised release. During the same sentencing proceeding, the court then considered the sentence to be imposed for the violation of supervised release, but did so without consideration of any of the mitigation factors presented by defense, clearly set forth in the Presentence Investigation Report, and not denied by the government.

Although the court considered the violation of supervised release in aggravation in arriving at the sentence to be imposed for the underlying offense, the court failed to consider any of the defendant's individual characteristics in mitigation of the sentence for the violation of supervised release. Andrew Moody was denied fundamental fairness when the court then imposed the ultimate sentence to run consecutive to the underlying offense. The court failed to consider these important mandated mitigation factors without any explanation, whatsoever. The result is that Andrew Moody was sentenced to serve 230 months (6 months short of twenty years) for engaging in conduct that carried a substantial mandatory minimum of 120 months.[2]

The level of disappointment and failed expectations was profound for a defendant with young children, who has never served more than 60 months in prison. It is fundamentally unfair to Andrew Moody - - who worked hard on the defense sentencing submission to present the district court with

---

[2] In this case, the government permitted Andrew Moody to plead guilty, without the entry of a guilty plea, to the violation of 18 U.S.C. §924(c). Had Andrew Moody been required to plead to the violation of 18 U.S.C. §924(c), his combined mandatory minimum would have been a total of 180 months, 10 years for the violation 21 U.S.C. §841(b)(1)(A) to be followed by a mandatory consecutive 60 months on the violation of 18 U.S.C. §924(c). Applying the sentence for the violation of supervised release would have been required to be served consecutive to the underlying offense. In this case, the violation that was imposed without consideration of the 18 U.S.C. §3553(a) was 50 months beyond what would have been required, had Andrew Moody been required to serve the mandatory minimum of 180 months. This is the very same sentence that Andrew Moody would have been required to serve had both mandatory miniums applied to his sentence.

6

powerful factors that derailed his life and directly impacted and influenced his participation in the crime conduct charged - - that the 3553(a) factors would not be fairly and evenly considered in connection with the sentence ultimately imposed on his day of sentencing.

Andrew Moody understands that this court is reluctant to grant these applications where there has been a plea agreement, and the sentence appears to be within the expectations of the parties as articulated and set forth in that plea agreement. Andrew Moody understands that an agreement is an agreement, and that the Second Circuit has to be concerned with *"opening the flood gates"* of appellate litigation to defendants who are simply disappointed by the sentence imposed. This reality is fully understood and respected by Andrew Moody. However, Andrew Moody presents a different situation. When there is a sentence of the magnitude imposed in this case (19 years and 6 months), the defendant who must serve that lengthy sentence - - and his young children and family who will be deprived of the freedom of their father for such a long time - - are deserving of a fundamentally fair application of Congress' mandate for the meaningful consideration of the powerful mitigation factors that were painstakingly investigated and presented for consideration at the time of sentence. And, at a minimum, there should be some explanation by the district court of the reasons why the powerful mitigation factors presented were not considered *at all* in arriving at the sentence to be imposed for the violation of supervised release.

This court has jurisdiction to ensure that an offender who has been sentenced to such a lengthy sentence, along with all the consequences that flow from the service of that sentence, was afforded fundamental fairness. There is no prejudice to the government, whatsoever, should the Second Circuit remand this case back to the district court for at least an explanation of the failure to apply the 3553(a) factors, and then run that sentence consecutive to the underlying offense.

It is as a result of the foregoing that Andrew Moody prays that this court does not dismiss his appeal. Andrew Moody has a long journey ahead, a difficult sentence to serve, and an even more

7

difficult task to steer his young sons away from the circumstances and parental abandonment that derailed his own life. It is our hope that there remains a commitment to fundamental fairness, which is sometimes no more than a fair explanation of the method by which the court arrived at such a substantial sentence to be endured. Justice and mercy warrants as much.

## II. Conclusion

In light of all the reasons set forth above, both legal and factual, the defendant-appellant, Andrew Moody, a once promising boy whose life was derailed as a result of the drug addiction and abandonment of his parents, and the obstacles imposed by life in a drug infested, violent community, respectfully requests that United States Court of Appeals for the Second Circuit construe the waiver in his plea agreement with "special due process concerns for fairness," and deny the government's motion to dismiss his appeal *in the name of fundamental fairness*.

Dated: New York, New York
      March 16, 2023

*Anthony L. Ricco*
Anthony L. Ricco
*Attorney for Andrew Moody*